IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** _____ |
| v. | : | **DATE FILED:** _____ |
| **JOSEPH RAICH** | : | **VIOLATION:**<br>18 U.S.C. § 1349 (mail and wire fraud conspiracy – 1 count) |
| | : | |

### INFORMATION

### COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

*Regulation of Pesticides*

1. The United States Environmental Protection Agency ("EPA") was the federal agency responsible for protecting the health and safety of the public by enforcing the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq*. FIFRA provided for federal regulation of pesticide distribution, sale and use. The purpose of FIFRA was to ensure that pesticides sold in the United States were safe, effective and bore labeling that contained true and accurate information. EPA was responsible under FIFRA for regulating the manufacturing, labeling, marketing, sale and distribution of all pesticides shipped or received in interstate commerce.

2. FIFRA defined a "pesticide" as "any substance or mixture of substances intended for preventing, destroying, repelling or mitigating any pest." 7 U.S.C. § 136(u). An "antimicrobial pesticide" was a pesticide that was "intended to (i) disinfect, sanitize, reduce or mitigate growth or development of microbiological organisms; or (ii) protect inanimate objects,

industrial processes or systems, surfaces, water or other chemical substances from contamination, fouling or deterioration caused by bacteria, viruses, fungi, protozoa, algae, or slime." 7 U.S.C. § 136(mm).

3. All pesticides must have been registered with the EPA before they could be sold or distributed. 7 U.S.C. § 136a(a). Applicants who sought to register a pesticide must have submitted required information to the EPA in support of a request for registration, including the complete formula of each pesticide, all proposed labeling (which includes claims of effectiveness), and, if requested, all of the data underlying the claims in the proposed labeling. *See* 7 U.S.C. § 136a(c).

4. As a condition of registration, all registered pesticides needed a label conveying specified information, including (among other things) the name and address of the producer, the product's ingredients and contents, hazards posed by the product, and directions for appropriate use. 40 C.F.R. § 156.10(a)(1). A label could not have any false or misleading statements, including any false or misleading statement concerning the effectiveness of the product as a pesticide, or of the value of the product for purposes other than as a pesticide. 40 C.F.R. § 156.10(a)(5).

5. An antimicrobial pesticide must have been proven effective through scientific testing in order to be registered. *See* 40 C.F.R. Part 158, Subpart W. An applicant must have ensured through testing that its product was effective when used as directed. 40 C.F.R. § 158.2220(a)(1). For any product that makes a "public health claim," the applicant must have supplied the product performance data to EPA in order to be registered and labeled. 40 C.F.R. § 158.2220(a)(2). A "public health claim" was a claim that the product can control microorganisms that pose a threat to human health, and whose presence cannot be readily observed, 40 C.F.R. §

158.2204(a), including a claim that a product is a virucide or sanitizer against microorganisms that are infectious to humans, 40 C.F.R. § 158.2204(a)(2). A claim or representation that a product was effective in killing or eradicating the SARS-CoV-2 virus would have constituted a "public health claim."

6. It was unlawful to distribute or sell a registered pesticide by making claims about the product that differed substantially from the statements made and proven in the registration process. 7 U.S.C. § 136j(a)(1)(B).

7. ViaClean Technologies, LLC, charged elsewhere, was a Pennsylvania limited liability corporation based in Philadelphia, Pennsylvania. A large ownership share was held by another Pennsylvania limited liability corporation of which James Young, charged elsewhere, owned a controlling interest. At all times relevant to this information, Young maintained operational control of ViaClean.

8. ViaClean Technologies, LLC sold various antimicrobial products.

9. James Young was the "Chief Executive Officer," and later the "Founder and Executive Chairman" of ViaClean Technologies, LLC. Young also held a seat on ViaClean's Board of Directors. Young sold and marketed products for ViaClean, and caused employees, agents, distributors and other persons to do so as well.

10. Defendant JOSEPH RAICH had a financial interest in ViaClean Technologies, LLC. Defendant RAICH sold and marketed products for ViaClean, including by making false and misleading statements.

11. Company #1, a Florida corporation known to the United States Attorney, had registered various antimicrobial pesticides. In or about January 2018, Company #1's shareholders, including defendant JOSEPH RAICH, sold all of the stock of Company #1 to

ViaClean Technologies, LLC. Thereafter, Company #1 was a wholly-owned subsidiary of ViaClean. As part of the sale of Company #1, the former Company #1 shareholders became entitled to a 7% royalty payment on all future product sales, licensing agreement proceeds, chemical sales and services sales of ViaClean. Therefore, the sellers of Company #1, including defendant RAICH, were set to reap financial benefits from ViaClean's future success.

12. After its purchase of Company #1, ViaClean Technologies, LLC owned the rights to various products that Company #1 had registered with EPA, including:

    a. Bio-Protect 7200 ("BP 7200"), registered September 1, 2010 (EPA Reg. No. 87583-1), an antimicrobial pesticide, consisted of 72% of the active ingredient "3-(Trimethoxysilyl) propyldimethyl octadecyl ammonium chloride" (a chemical compound referred to herein as a "Silane Quat"), and 28% inactive ingredients. ViaClean Technologies, LLC did not offer BP 7200 for sale, using it instead as a component of other products. According to its approved labeling, BP 7200 was a microbiostatic agent that inhibited the growth of odor-causing bacteria, bacteria which cause staining and discoloration, fungi (mold and mildew), and algae, and did not protect users against disease-causing bacteria.

    b. Bio-Protect AM500 ("BP 500"), registered September 7, 2010 (EPA Reg. No. 87583-2), was an antimicrobial pesticide made by diluting BP 7200; it, therefore, contained the same Silane Quat active ingredient but at a 5% concentration. ViaClean Technologies, LLC sold BP 500 to customers. In order to apply BP 500 to a surface as an antimicrobial pesticide, the applicator would have to dilute the product in accordance with the instructions on the BP 500 label. According to its approved labeling, BP 500 was a microbiostatic agent that inhibited the growth of odor-causing bacteria, bacteria which cause staining and discoloration, fungi (mold and mildew), and algae, and did not protect users against

4

disease-causing bacteria.

        c.      Bio-Protect AM50 ("BP RTU"), registered July 22, 2011 (EPA Reg. No. 87583-3), was an antimicrobial pesticide that contained the same Silane Quat active ingredient as BP 7200 and BP 500 at a "Ready-To-Use" concentration of 0.5%. BP RTU was ready to be applied and did not need further dilution by the applicator. According to its approved labeling, BP RTU was a microbiostatic agent that inhibited the growth of odor-causing bacteria, bacteria which cause staining and discoloration, fungi (mold and mildew), and algae, and did not protect users against disease-causing bacteria.

        d.      Bio-Protect DP ("BP DP"), registered November 3, 2011 (EPA Reg. No. 87583-5) was a "Dual Purpose" disinfectant and antimicrobial pesticide product. It was formulated to disinfect a surface and also provide longer-lasting protection from contamination by certain microbes. BP DP contained 35.6% of the same Silane Quat active ingredient as BP 7200, BP 500 and BP RTU. In addition to that ingredient, BP DP also contained four other active ingredients,[1] and 48.4% inactive ingredients. The label instructions for BP DP directed a user to dilute the BP DP by putting one half ounce of BP DP into one gallon of water. According to its approved labeling, BP DP was effective against two identified bacteria, and also against odor-causing and stain-causing bacteria, fungi and algae.

        13.      In addition to the BP products registered with EPA, ViaClean Technologies, LLC also sold the disinfectant Vital Oxide, under the brand name "SmartTouch" (EPA Reg. No. 82972-1-88566). Vital Oxide (EPA Reg. No. 82972-1) was approved to make

---

[1] The other active ingredients in BP DP were:
  a) n-alkyl (50% $C_{14}$, 40% $C_{12}$, 10% $C_{18}$) dimethyl benzyl ammonium chloride (6.40%);
  b) Octyl decyl dimethyl ammonium chloride (4.80%);
  c) Didecyl dimethyl ammonium chloride (2.88%); and
  d) Dioctyl dimethyl ammonium chloride (1.92%).

public health claims of efficacy against a long list of viruses. During the Covid-19 pandemic, Vital Oxide was included on EPA's "List N," which was a list of disinfectants deemed likely to be capable of killing SARS-CoV-2, the virus that causes Covid-19 based on its proven ability to kill certain other viruses. ViaClean sold and distributed SmartTouch and also manufactured SmartTouch by diluting a concentrate of Vital Oxide.

From at least in or about January 2020 through at least in or about October 2020:

14.     In response to the Covid-19 pandemic and the public desire for products that would protect people from infection by viruses, including SARS-CoV-2, defendant JOSEPH RAICH, along with ViaClean Technologies, LLC; James Young; ViaClean's "Chief Technology Officer" ("CTO"), known to the United States Attorney and who is now deceased; and others known and unknown to the United States Attorney, sold, promoted and marketed BP 500 and BP RTU by falsely claiming that those products were effective against viruses, including SARS-CoV-2.

15.     In response to the Covid-19 pandemic and the public desire for products that would protect people from infection by viruses, including SARS-CoV-2, defendant JOSEPH RAICH, along with ViaClean Technologies, LLC, James Young, CTO, and other others known and unknown to the United States Attorney, sold, promoted and marketed BP 500 and BP RTU by falsely claiming that those products provided continuing protection against viruses, including SARS-CoV-2, for extended periods of time and up to 90 days without reapplication.

16.     In response to the Covid-19 pandemic and the public desire for products that would protect people from infection by viruses, including SARS-CoV-2, defendant JOSEPH RAICH, along with ViaClean Technologies, LLC, James Young, CTO, and others known and unknown to the United States Attorney, caused other persons, including employees, agents and

distributors to sell, promote and market BP 500 and BP RTU by falsely claiming and leading people to believe that those products were effective against viruses, including SARS-CoV-2, for extended periods of time and up to 90 days without reapplication.

17. Defendant JOSEPH RAICH, along with ViaClean Technologies, LLC, James Young, CTO, and others known and unknown to the United States Attorney, made claims for BP 500 and BP RTU that differed substantially from those products' registration statements that were limited to claims that they were effective against odor-causing and stain-causing bacteria, fungi (mold and mildew) and algae, and did not support any public health claims.

18. At the start of the Covid-19 pandemic in the United States, in or about January 2020, ViaClean Technologies, LLC, James Young, and CTO, in consultation with defendant JOSEPH RAICH, decided to test BP DP, and only BP DP, for effectiveness against SARS-CoV-2 at two overseas laboratories that were affiliated with a virology consortium (the "Consortium").

19. The Consortium's test results showed that the product tested, BP DP, had at least some effect against SARS-CoV-2. However, unlike BP 500 and BP RTU, BP DP contained active ingredients that were disinfectants.

20. Although only BP DP had been tested, defendant JOSEPH RAICH, along with ViaClean Technologies, LLC, James Young, CTO, and others known and unknown to the United States Attorney, caused and allowed customers to believe that BP 500 and BP RTU had been tested.

21. Defendant JOSEPH RAICH, along with ViaClean Technologies, LLC, James Young, CTO, and others known and unknown to the United States Attorney, leveraged widespread concerns about the Covid-19 pandemic to sell products that were made to combat

odor-causing or stain-causing bacteria, fungi (mold and mildew) and algae as though they were also effective against viruses and as though they remained effective at doing so for a substantial period of time.

## THE CONSPIRACY

22. From at least in or about January 2020 through at least in or about October 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant

## JOSEPH RAICH

conspired and agreed with ViaClean Technologies, LLC, James Young, and with other persons known and unknown to the United States Attorney, to commit mail fraud and wire fraud, that is, to knowingly execute and attempt to execute a scheme to defraud customers of ViaClean Technologies, LLC and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. §§ 1341 and 1343.

## MANNER AND MEANS

It was part of the conspiracy that defendant JOSEPH RAICH, ViaClean Technologies, LLC, James Young, and others known and unknown to the United States Attorney:

23. Made false and fraudulent claims about capabilities and efficacy of BP 500 and BP RTU in order to sell those products.

24. Falsely stated and implied that BP 500 and BP RTU could prevent viral contamination of surfaces.

25. Falsely stated and implied that BP 500 and BP RTU could prevent viral contamination of surfaces for an extended period of time and up to 90 days.

26. Falsely implied that BP 500 and BP RTU had been tested against SARS-

CoV-2, the virus that caused Covid-19, when only a materially different product had been tested.

27. Deliberately marketed BP 500 and BP RTU as a "system" in combination with the disinfectant SmartTouch, in order to claim and imply that BP 500 and BP RTU provided long-term protection against viruses, when those products were, in fact, only effective to "inhibit the growth of odor causing bacteria, bacteria which cause staining and discoloration, fungi (mold and mildew), and algae."

28. Deliberately sold and distributed BP 500 and BP RTU by making claims for each product that substantially differed from any claims made for the product in connection with its registration under FIFRA.

29. Sold BP 500 and BP RTU to customers, including hundreds of gallons of BP RTU sold to Customer #1, a commercial real estate business known to the United States Attorney, by falsely claiming that the products could protect surfaces from contamination by viruses for an extended period of time.

30. Sent and caused to be sent shipments of BP 500 and BP RTU from Philadelphia, in the Eastern District of Pennsylvania, to locations outside of Pennsylvania via interstate carrier.

31. Used the internet, including social media, to promote the business of ViaClean Technologies, LLC by making false and fraudulent claims.

32. Disseminated and circulated press releases touting an alleged ability of BP 500 and BP RTU to inhibit and prevent the growth and spread of viruses.

33. Obtained money and property by means of false and fraudulent claims for BP 500 and BP RTU.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, defendant JOSEPH RAICH and others known and unknown to the United States Attorney committed the following overt acts, among others, in the Eastern District of Pennsylvania, and elsewhere:

1. On or about August 13, 2020, ViaClean Technologies, LLC sent a 55-gallon drum containing BP RTU to Customer #1 at a property in Statesboro, Georgia.

On or about August 14, 2020:

2. ViaClean Technologies, LLC sent a 55-gallon drum containing BP RTU to Customer #1 at a property in Knoxville, Tennessee.

3. ViaClean Technologies, LLC sent a 55-gallon drum containing BP RTU to Customer #1 at a property in Columbus, Ohio.

All in violation of Title 18, United States Code, Section 1349.

*Christine E. Ayres for*
**DAVID METCALF**
**UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

JOSEPH RAICH

INFORMATION

18 U.S.C. § 1349 (mail and wire fraud conspiracy – 1 count)

A true bill.

_____
Foreperson

Filed in open court this _____ day,
of _____ A.D. 20____

_____
Foreperson

Bail, $ _____